UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KURT CHERAMIE,<br>*Plaintiff*<br><br>v.<br><br>KINETICA PARTNERS, LLC<br>*Defendant* | CIVIL ACTION NO. _____<br><br><br>JUDGE _____<br><br><br>MAG. JUDGE _____ |

## ORIGINAL COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

1.  Kurt Cheramie brings this action against his longtime employer, Kinetica Partners, LLC ("Kinetica"), for demoting and terminating him based on his age. Mr. Cheramie dedicated more than forty years to managing the pipeline assets Kinetica now owns, and with hard work, rose to the top leadership role at Kinetica. Then, in 2023, Troy Eckard acquired Kinetica and began targeting older employees. Despite Mr. Cheramie's continued strong performance, Mr. Eckard humiliated him and other older employees in company-wide videos where he said employees who were "aging and looking to retire" would not be a part of "creat[ing] a better, stronger foundation for Kinetica." Mr. Eckard also demoted Mr. Cheramie, publicly referred to him as an "old geezer," and later terminated him in May 2024. His responsibilities were reassigned to substantially younger employees who were less qualified. Through this action, Mr. Cheramie seeks to remedy

the discriminatory and unlawful employment practices that forced him into early retirement and cost him substantial earnings and benefits.

## II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Mr. Cheramie's claims arise under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, as amended, which is a federal statute. This Court also has supplemental jurisdiction over Mr. Cheramie's related claims arising under Louisiana state law pursuant to 28 U.S.C. § 1367(a).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Cheramie's claims occurred within Houma, Terrebonne Parish, Louisiana, which is in the Eastern District of Louisiana

## III.     PARTIES

4.     Plaintiff **KURT CHERAMIE** is 67 years old and resides in Houma, Terrebonne Parish, Louisiana, within the Eastern District of Louisiana. Between September 1, 2013, and May 22, 2024, Mr. Cheramie worked for Kinetica Partners, LLC, out of the company's Houma office located at 224 Aviation Road, Houma, LA 70363.

5.     Defendant **KINETICA PARTNERS, LLC** (hereinafter "Defendant" or "Kinetica") is a limited liability corporation domiciled in Texas. It is registered to do business in Louisiana, and its registered agent is the National Registered Agents, Inc. at 3867 Plaza Tower Dr. in Baton Rouge, LA 70816. Its principal place of business in Louisiana is located at 949 Ryan Street, Suite 230, Lake Charles, LA 70601, and it also maintains an office located at 224 Aviation

Road, Houma, LA 70363, where Mr. Cheramie worked between September 1, 2013, and May 22, 2024.

## IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Mr. Cheramie timely filed Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination No. 461-2025-00079 on October 7, 2024, alleging age discrimination by Defendant.

7. The EEOC issued Mr. Cheramie's Notice of Right to Sue on July 23, 2025.

## V.  FACTS

**A.  Mr. Cheramie was a Dedicated Oil and Gas Professional for Over Forty Years.**

8. Mr. Cheramie was a hardworking, knowledgeable professional who dedicated over four decades to working on the oil and gas pipeline assets now owned by Kinetica. From 1981 to 2013, he worked for Tennessee Gas Pipeline Company in various capacities on these assets. Then, on September 1, 2013, Kinetica acquired the assets and hired Mr. Cheramie as a manager in its right-of-way department. From 2013 to 2020, Kinetica promoted Mr. Cheramie multiple times, and entrusted him with increasing responsibility for overseeing more and more aspects of the company's operations.

9. In 2018, Kinetica's original owners promoted Mr. Cheramie to share the role of co-Vice President with his younger colleague, Rae Donaldson. There was no President, so they both shared the top position in the company. In 2020, Kinetica's owners promoted Mr. Cheramie and Mr. Donaldson to serve together as Senior Vice Presidents.

3

10. During Mr. Cheramie's tenure, Kinetica never issued him a negative performance review or imposed any disciplinary action.

11. In April 2023, as he approached his 65th birthday, Mr. Cheramie announced to Marsha McCombs Shields, Gary Woods, and Troy Eckard, the three co-owners of Kinetica, Mr. Donaldson, and Bill Prentice, General Counsel for Kinetica, that he planned to retire "most probably [at] the end of 2024 or later." Mr. Cheramie explained that he could continue to serve as a consultant for Kinetica after leaving his full-time position. Mr. Cheramie discussed his retirement plans early on to ensure a smooth transition and time to prepare.

### B. After Assuming Control of Kinetica, Troy Eckard Began Discriminating Against Older Employees, Including Mr. Cheramie.

12. In December 2023, Troy Eckard, one of the minority owners of Kinetica, purchased Kinetica from the other two owners through his company Eckard Midstream, LLC ("Eckard").

13. In January 2024, at the first meeting of the new Kinetica leadership, Mr. Eckard, who is younger than Mr. Cheramie, promoted the younger Mr. Donaldson from co-Senior Vice President to President of Kinetica, even though Mr. Cheramie had more extensive experience with Kinetica's assets and business management than Mr. Donaldson did. At the meeting, Mr. Eckard presented an organizational chart that showed Mr. Donaldson as President, and did not include Mr. Cheramie on the chart at all. Concerned, Mr. Cheramie asked Mr. Eckard after the meeting where he fit into the company, and Mr. Eckard agreed to discuss a role for Mr. Cheramie with Mr. Donaldson.

14. A few days later, Mr. Eckard re-assigned Mr. Cheramie to the demoted role of Executive Vice President reporting to Mr. Donaldson, and noted in the company's organizational chart that Mr. Cheramie would remain in that position "through Dec. 2024."

15. Beginning in January 2024, Mr. Eckard regularly emailed videos to all Kinetica employees, in which he stated that employees of retirement age would not be with Kinetica long.

16. Mr. Cheramie was not the only older employee Mr. Eckard was trying to push out of the company. On January 9, 2024, at Kinetica's Houston office, Mr. Eckard told three of the oldest Houston employees (Mark Sellers (age 73), Manager of Measurement; Jeanie Falkenstein (age 68), another Measurement employee; and Rick Sacco (age 67), Director of Engineering, Operations Support, and Corrosion Control) that if they did not want to continue working or could not put in the effort Mr. Eckard wanted to see, they would be offered a three-month severance. These employees were shocked as they had not announced plans to retire or had performance issues. Unready to stop working, none of them asked for a severance. Mr. Eckard did not tell younger employees the same thing.

17. Then, in February 2024, Mr. Eckard demoted Mr. Sacco from Director of Engineering, Operations Support, and Corrosion Control to Engineer, a two-level demotion. Mr. Donaldson simultaneously promoted Joshua Bergeron, a 30-year-old engineer, to replace Mr. Sacco as Director:



18. Mr. Sacco was a strong performer; Mr. Eckard had no reason to justify Mr. Sacco's demotion. Further, Mr. Bergeron was less qualified than Mr. Sacco, as he had much less experience in the field, and was not a licensed Professional Engineer like Mr. Sacco was.

19. On April 10, 2024, Mr. Eckard sent another video to all Kinetica employees, in which he discussed plans for hiring to replace "people who are probably going to be retiring." On May 14, 2024, Mr. Eckard sent out another video to all Kinetica employees, in which he again discussed employees who were "aging and looking to retire" and his efforts to "create a better, stronger foundation for Kinetica" "with a team of people that have bought in and are committed for the next 10 years of growing this company[.]"

6

20. Despite his demotion and Kinetica's negative treatment of other older employees, Mr. Cheramie continued to successfully perform his work duties at Kinetica throughout the spring of 2024. He continued to successfully oversee the company's scheduling and gas control. He also ensured that all rentals were up-to-date and that all permits for offshore abandonment projects that were his responsibility were completed.

21. On May 18, 2024, at a company picnic, Mr. Eckard referred to a group of employees in their sixties, including Mr. Cheramie, Mr. Sacco, and David Juncker (age 62), as "old geezers" in front of these men, other employees, and all of their families.

**C.    Kinetica Abruptly Terminated Mr. Cheramie, Just Days After Calling Him an "Old Geezer."**

22. On May 20, 2024, just two days later, Bill Prentice, Kinetica's Vice President and General Counsel, told Mr. Cheramie that Mr. Eckard was terminating Mr. Cheramie's full-time employment with Kinetica on June 30, 2024.

23. In the same meeting, Mr. Prentice offered him a new consulting role for just 30 hours per week, where his salary would be reduced by 25 percent, and he would lose all benefits, including health insurance for his family and important retirement benefits. The offered consulting contract also required that he sign a waiver of all potential claims against Kinetica, including age discrimination claims. Mr. Cheramie expressed his shock and explained that the latest organizational chart showed him in the full-time Executive Vice President role through December 2024. Mr. Prentice said the organizational chart was no longer relevant and told Mr. Cheramie to take a few days to consider the consulting offer.

24. On May 22, 2024, Mr. Cheramie asked Mr. Prentice if Kinetica would reconsider its decision to terminate him to allow him to retain his employee benefits through the end of 2024, even if it reduced his workload and salary. Mr. Prentice said no. Mr. Prentice then terminated his employment, telling him that someone would come by to pick up his company car and drop off his things from the office the next day.

25. On May 23, 2024, in a company-wide email, Mr. Donaldson praised Mr. Cheramie's performance, and then lied and told all Kinetica employees that Mr. Cheramie had resigned:



26. Later that day, Mr. Prentice also texted Mr. Cheramie a copy of a cease-and-desist letter instructing him to refrain from all contact with Kinetica employees, employers, customers, and vendors despite having no lawful basis to do so.

**D.    After Terminating Mr. Cheramie, Kinetica Promoted Younger, Less Qualified Employees.**

27.    Soon after Kinetica fired Mr. Cheramie, Kinetica promoted Blake Arnold, who is about 15 years younger than Mr. Cheramie, to Vice President of Commercial/Business Development to assume many of Mr. Cheramie's duties, including assigning Mr. Arnold to supervise the Gas Control and Scheduling departments that had previously reported to Mr. Cheramie. Mr. Arnold had only worked on Kinetica's assets for approximately four years before his promotion, so he lacked the significant experience and wealth of knowledge about the assets that Mr. Cheramie possessed.

28.    Mr. Arnold also had no experience with Permitting or Rights of Way, which were some of Mr. Cheramie's specialties, so Kinetica also promoted one of Mr. Cheramie's younger, less-qualified former reports, Nicole Leverage, to supervise the Environmental, Safety, and Health, Permitting, and Rights of Way Departments that had previously reported to Mr. Cheramie. Kinetica assigned some of Mr. Cheramie's other responsibilities to two other younger and less qualified employees: Russell Soudelier and Luke Harrington, who began reporting to Ms. Leverage. All three had only spent approximately four years each working in the oil and gas industry and Mr. Cheramie had been solely responsible for their professional training at Kinetica.

**E.    Kinetica Forced Out Several Other Older Employees After Terminating Mr. Cheramie.**

29.    On June 12, 2024, Mr. Prentice and Mr. Donaldson fired Mr. Sacco. They provided him with a termination letter and then offered him a part-time consulting role requiring a waiver of all claims, with a significant pay cut and the loss of all benefits, similar to what Kinetica offered Mr. Cheramie. His last day at Kinetica was July 3, 2024.

9

30. Soon after terminating Mr. Sacco, Kinetica also terminated at least two other older employees: Mr. Sellers and Jose Parra, an employee in his mid-70s in Kinetica's accounting group. Kinetica similarly offered them new demoted, part-time consulting positions with a waiver of claims required and no benefits.

31. Another older employee, David Junker, was afraid he would also be fired soon, since Mr. Eckard had also called him an "old geezer." To avoid having a termination on his record, he decided to resign from Kinetica in June 2024.

### F.     Mr. Eckard Continued to Threaten Older Employees.

32. On June 5, 2024, Mr. Eckard sent out another video to all Kinetica employees in which he addressed his termination of older employees as recent "employee adjustments." He stated that the company was "accepting . . . resignations" from employees who "want to retire" or "would like to go to less of a full-time job." He explained he was "trying to build a 10-year mentality at Kinetica," and that he would "let those who want to retire . . . do so," while looking at "each and every employee" for long-term buy-in.

33. On October 7, 2024, Mr. Cheramie filed a Charge of Discrimination with the EEOC detailing Kinetica's age discrimination against him.

34. On November 12, 2024, Mr. Eckard sent out yet another video to all Kinetica employees in which he confessed that "a couple of employees have filed … EEOC complaints against me and the company saying that because of their age is why they are no longer with the company." While Mr. Eckard initially denied discrimination, claiming, "I don't care if you're short, tall, big, fat, black, white. I don't care if you're old or young. I don't care if you're handicapped, not handicapped," he went on to say that even "more important" than "comply[ing] by the law" was

"comply[ing] by the necessity to survive and grow as a business." "No one is entitled to work for Kinetica. No one," Mr. Eckard went on to say. He then made a dismissive reference to older employees who "thought because they had been with the company, they were just going to have a job until they decided to go home." He joked that employees who saw his offensive comments as "veiled threats," "[have] got to relax." Yet he went on to make an explicit threat to employees who are "ready to retire": "We'll help you out the door."

35. On November 15, 2024, in its response to the Charge of Discrimination, Kinetica alleged for the first time that Mr. Cheramie's work ethic had declined in the spring of 2024. However, Kinetica did not claim that performance justified a decision to terminate him as Kinetica maintained that it did not terminate Mr. Cheramie, and that he instead resigned from his position on May 22, 2024.

    **G.**    **Mr. Cheramie Has Suffered Significant Losses as a Result of His Discriminatory Termination.**

36. As a result of his termination, Mr. Cheramie has lost wages and benefits. Moreover, he has suffered emotional distress from the unlawful treatment and termination.

### VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Age Discrimination in Violation of the Age Discrimination**
**in Employment Act of 1967, ("ADEA"),**
**29 U.S.C. § 621, et seq.**

37. Mr. Cheramie hereby incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

38. Defendant was an employer within the meaning of 29 U.S.C. § 630 and employed twenty or more employees.

39.     Mr. Cheramie was at least forty years old when employed by Defendant.

40.     Mr. Cheramie was subjected to adverse employment actions when Defendant demoted and ultimately terminated him.

41.     Mr. Cheramie was qualified for his position as Executive Vice President.

42.     Defendant would not have taken adverse employment actions against Mr. Cheramie but for his age.

43.     After demoting Mr. Cheramie, Defendant replaced him with a younger, less qualified employee, who did not have as much extensive experience with Kinetica's assets and business management as Mr. Cheramie did. After terminating Mr. Cheramie, Defendant again replaced him with younger, less qualified employees who did not have the same level of experience on Kinetica's assets or expertise in the specialized areas of Permitting and Rights of Way as Mr. Cheramie did.

44.     Defendant is vicariously liable for the actions of Mr. Cheramie's supervisors.

45.     As a direct and proximate result of Defendant's discriminatory conduct, Mr. Cheramie has suffered and continues to suffer substantial damages, and he is entitled to such damages, liquidated damages, and attorneys' fees and costs as permitted by law.

46.     Defendant's discriminatory conduct was willful and in knowing and/or reckless disregard of the requirements of the ADEA.

47.     Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its agents, directly and proximately caused Mr. Cheramie's damages and losses.

**SECOND CAUSE OF ACTION**
**Age Discrimination in Violation of the**
**Louisiana Employment Discrimination Law**
**La. R.S. 23:301–23:369**

48. Mr. Cheramie hereby incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

49. The Louisiana Employment Discrimination Law ("LEDL") provides that "[i]t is unlawful for an employer to . . . [f]ail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment because of the individual's age." La. R.S. § 23:312(A).

50. Defendant was an "employer" as defined by LA R.S. § 23:302(2) and employed twenty or more employees.

51. Mr. Cheramie was at least forty years old when employed by Defendant.

52. As detailed above, Defendant took adverse employment actions against Mr. Cheramie because of his age, including, but not limited to, demoting him and terminating his employment.

53. Mr. Cheramie was qualified for his position as Executive Vice President.

54. Defendant would not have taken adverse employment actions against Mr. Cheramie but for his age.

55. After demoting and terminating Mr. Cheramie, Defendant replaced him with younger, less qualified employees.

56. Defendant is vicariously liable for the actions of Mr. Cheramie's supervisors.

As a direct and proximate result of Defendant's misconduct, Mr. Cheramie has suffered and continues to suffer damages, including but not limited to lost wages and emotional damages, and is thus entitled to all damages and remedies available under LEDL, including attorneys' fees, pursuant to La. R.S. § 23:303.

57.     Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its agents, directly and proximately caused Mr. Cheramie's damages and losses.

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiff Kurt Cheramie requests judgment be entered against Defendant on his asserted causes of action and that the Court grant the following relief:

a. Declaratory relief;

b. Injunctive and equitable relief, including, but not limited to, an order for Defendant to reinstate Plaintiff, or in the alternative, front pay/benefits, and interest;

c. Judgment against Defendant for Plaintiff's asserted causes of action;

d. Damages in such an amount as shall be determined at trial to compensate Plaintiff for all monetary and/or economic damages, including back pay, lost benefits, front pay, future wages and benefits, promotions, tenure, seniority, lost promotions, job security, and other employment opportunities;

e. Compensatory damages, including for emotional distress;

f. Liquidated damages;

g. Attorneys' fees and costs;

h. Pre-and post-judgment interest; and

    i. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 29th day of September, 2025.

/s/ Casey Rose Denson

**Casey Rose Denson (La. #33363)**
cdenson@caseydensonlaw.com
**Rachel Hudson (La. #40827)**
rhudson@caseydensonlaw.com
**CASEY DENSON LAW, LLC**
8131 Oak Street, Suite 100
New Orleans, LA 70118
Phone: (504) 224-0110
Fax: (504) 534-3380

*Attorneys for Plaintiff Kurt Cheramie*